CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

SEP 0 3 2009

JOHN F. CORCORAN, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| FEDERAL INSURANCE CO., *Plaintiff*, | CIVIL NO. 6:09CV00033 |
| v. | **MEMORANDUM OPINION** |
| STEWART PARNELL, *et al.*, *Defendants*. | JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiff Federal Insurance Company's unopposed Motion for Summary Judgment (docket no. 100) pursuant to Federal Rule of Civil Procedure 56. Federal requests the entry of an Order discharging it from this action in accordance with the Interpleader Act and granting a permanent injunction preventing the claimants "from instituting or prosecuting any proceeding in any State or United States court" affecting the Policy or the proceeds that Federal has deposited with the Court. For the reasons set forth below, Federal's Motion will be granted in a separate Order to follow.

I. BACKGROUND

A. THE SALMONELLA OUTBREAK

In late 2008, the Center for Disease Control and Prevention identified an outbreak of a strain of *Salmonella* Typhimurium linked to the infections of hundreds of people in over forty different states. A subsequent investigation by the Minnesota Departments of Agriculture and Health in early 2009 linked the salmonella strain to a brand of peanut butter produced by the Peanut Corporation of America ("PCA") at its Blakely, Georgia plant. In January 2009, the U.S. Food and Drug Administration ("FDA") commenced a

1

multiple-day regulatory inspection and later issued a report identifying the presence of salmonella at the Blakely plant. In consultation with the FDA, PCA eventually recalled more than 1900 peanut butter products that had been processed at the facility.

In the midst of the FDA inspection, the Subcommittee on Oversight and Investigations of the Committee on Energy and Commerce of the U.S. House of Representatives ("Subcommittee") sent Stewart Parnell – then the President, CEO, and part owner of PCA – a letter informing him that it had commenced a regulatory oversight proceeding designed to investigate the safety of the nation's food supply and directing him to provide specific information and documents in a "detailed written submission." Ten days later, Parnell received another letter from the Subcommittee requesting his testimony at a hearing, scheduled for February 11, 2009, concerning the salmonella outbreak. A follow-up letter sent to Parnell requested that PCA produce several specific documents in advance of the hearing. On January 30, 2009, the U.S. Department of Justice and the FDA Office of Criminal Investigations announced the commencement of a criminal investigation of PCA and its operations. Members of Congress and the Governor of Georgia later made statements calling for possible criminal charges and "for individuals to be held accountable."

### B. PCA's Directors' and Officers' Insurance Policy

PCA holds an insurance policy with Federal that provides corporate liability coverage for PCA and covers "claims" made against PCA executives and employees.[1]

---

[1] Under the Policy, a "claim" includes a "D&O (directors' and officers') Claim," which is defined as:
(1) any of the following:
   a. a written demand for monetary damages or non-monetary relief;
   b. a civil proceeding commenced by the service of a complaint or similar pleading;
   c. a criminal proceeding commenced by a return of an indictment; or
   d. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

2

The Policy has an aggregate liability limit of $1 million and was originally issued for the period of December 20, 2007 to December 20, 2008 and subsequently extended to April 10, 2009. Beginning in January 2009, Federal started to receive communications purporting to notify it of circumstances that could lead to a wide variety of possible lawsuits against PCA as a result of the Salmonella outbreak.

## C. FIC's Interpleader Complaint

On March 19, 2009, anticipating that the demands of Parnell and other PCA executives and employees for Policy proceeds would far exceed the $1 million maximum aggregate limit for the relevant Policy period, FIC filed an interpleader action in U.S. Bankruptcy Court for the Western District of Virginia, where PCA had previously filed a Chapter 7 bankruptcy petition.

On April 3, 2009, the Bankruptcy Court granted an unopposed motion to permit Federal to serve unknown defendants in the interpleader action by publication. On April 7th, the Bankruptcy Court also granted an unopposed motion to permit Federal to deposit its Policy limit of $1 million with the Clerk of Court. On April 21st, Federal wired the money to the account established by the Clerk's office. On April 29th, Parnell filed a motion to withdraw reference of the interpleader action from Bankruptcy Court to this Court. The motion was granted, and reference of the action was withdrawn on June 9th (docket no. 2).

## D. Competing Demands to Policy Proceeds

---

Against an Insured Person for a Wrongful Act, including any appeal therefrom; or
(2) A formal civil, criminal, administrative or regulatory investigation commenced by the service upon or other receipt by the Insured Person of a written notice from the investigating authority specifically identifying the Insured Person as a target individual against whom formal charges may be commenced...

3

As set forth more fully in Federal's brief, numerous Defendants have filed statements of claim to the interpled funds. Parnell demands $951,000 out of the $1 million in Policy proceeds. Joe Sams, a former manager at PCA's Blakely plant, demands that the Court "immediately release" $7,000 to reimburse his fees to date, and an additional $75,000 advance for his defense costs. Mary Wilkerson, the former quality assurance manager at the Blakely plant, seeks reimbursement for $30,000 in legal fees she claims she has already accrued and an additional $70,000 advance for further legal services. David Royster III and David Royster IV, two former directors of PCA, have filed a statement of claim purporting to reserve their rights to demand reimbursement from the $1 million fund. Finally, the Trustee for PCA disputes Parnell's claims to the Policy proceeds and argues that the proceeds are assets of the debtor's estate.

In light of these conflicting demands, Federal seeks to be discharged pursuant to the Interpleader Act on summary judgment and asks the Court to enter a preliminary injunction preventing the claimants from instituting any proceeding against it in state or federal court affecting the Policy or the proceeds that it has deposited with the Court. Federal has also filed a Motion for an Order Approving Service by Publication on fourteen named defendants received the complaint but have yet to complete a waiver of service, as well as nine named defendants who, after diligent efforts, Federal has been unable to locate. Shortly after Federal filed its Motion for Summary Judgment, the Court entered an Order directing the Defendants to file an objections and/or responses to the Motion within fourteen days. On August 28, 2009, Parnell filed a response brief, noting that he does not oppose Federal's Motion as long as the Court concludes that service has properly occurred. Nor does he oppose the entry of an injunction, provided the Court

4

does not make any award for costs or attorneys' fees to Federal from the Policy proceeds or otherwise (docket no. 104). On August 31st, the Trustee filed a response, noting that he does not oppose the granting of relief sought by Federal, "so long as the judgment does not make any award of attorneys' fees, expenses or costs to Federal Insurance Company, either from the proceeds of the insurance policy or otherwise" (docket no. 106).[2] No other Defendants filed responses to Federal's Motion within the specified time frame.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250.

In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to

---

[2] In footnote five of its Memorandum in Support of the Motion for Summary Judgment, Federal states that it will waive any claims to costs or attorneys' fees in this action.

5

the nonmoving party. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

6
Case 6:09-cv-00033-NKM-mfu   Document 110   Filed 09/03/09   Page 6 of 9   Pageid#: 1084

## III. DISCUSSION

Federal filed this action pursuant to the federal interpleader statutes, 28 U.S.C. § 1335 and § 2361, and Federal Rule of Civil Procedure 22. Section 1335 provides that district courts shall have original jurisdiction over actions in interpleader filed by any person in custody of a policy of insurance worth $500 or more if: (1) two or more adverse claimants, of diverse citizenship, are "claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any...policy or other instrument, or arising by virtue of such obligation," and (2) the plaintiff has deposited such money or property into the registry of the court. 28 U.S.C. § 1335. Rule 22 provides, in relevant part, that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Furthermore, under 28 U.S.C. § 2361, courts have the authority to enter broad injunctions enjoining all other litigation affecting the same money or property:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court...
>
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

"The principal of interpleader is that, where two persons are engaged in a dispute, and that which is to be the fruit of the dispute is in the hands of a third party, who is willing to give it up according to the result of the dispute, then, ... that third person...is not to be obliged to be at the expense and risk of defending an action; but, on giving up the thing...he is to be relieved, and the Court directs that the persons between whom the

7

dispute really exists shall fight it out at their own expense." *Equitable Life Assurance Soc'y v. Jones*, 679 F.2d 356, 358 n.2 (4th Cir. 1982) (citation omitted). An interpleader action typically involves two stages. "In the first stage, [the court] must determine whether the stakeholder is entitled to invoke the Court's interpleader jurisdiction to compel the plaintiffs to litigate their claims to the stake in one proceeding. In the second stage, [the court] must determine the respective rights of the claimants to the stake." *Crider v. Taylor*, 1989 U.S. Dist. LEXIS 18104, at *8 (W.D. Va. Nov. 13, 1989). Summary judgment is a common way to resolve the first stage of an interpleader action. *See Hudson Sav. Bank v. Austin*, 479 F.3d 102, 107 (1st Cir. 2007) (citations omitted).

Assuming the stakeholder meets the jurisdictional requirements set forth in 28 U.S.C. § 1335, "[t]he primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder is whether the stakeholder legitimately fears multiple litigation over a single fund." *Reliastar Life Ins. Co. v. LeMone*, 2006 U.S. Dist. LEXIS 11692, at *7 (W.D. Va. Mar. 16, 2006) (citing 7 Wright, et al., *Federal Practice and Procedure* § 1702, at 542 (3d ed. 2001)). In this case, there is no genuine dispute that Federal meets all the jurisdictional requirements of the Interpleader Act: (1) the amount in controversy is $1 million, (2) the more than 100 defendants include many who are diverse to each other, and (3) Federal has deposited the $1 million into the Court. There is also no genuine dispute that Federal legitimately fears the risk of multiple lawsuits over the Policy proceeds in this case. Many of the parties that have appeared before the Court concede that the claims under the Policy will far exceed the $1 million liability limit. The fact that PCA, its executives, and its employees are the subject of so many serious accusations of wrongdoing certainly makes it "legitimate" for Federal to

8

fear that there will be claims that will easily exhaust the Policy limit, and none of the Defendants dispute that contention. And, as summarized above, many of the Defendants have filed competing and irreconcilable demands for Policy proceeds. Accordingly, the Interpleader Act permits Federal to interpled its Policy limit and to obtain "a discharge…from further liability" with prejudice, as well as a permanent injunction restraining claimants "from instituting or prosecuting any proceeding in any State or United States court affecting the" Policy whose proceeds Federal has interpleaded. 28 U.S.C. § 2361; *New York Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983); *Reliastar*, 2006 U.S. Dist. LEXIS 11692, at \*13. I will grant Federal's Motion for Summary Judgment in a separate Order to follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

It is so **ORDERED**.

Entered this 2nd day of September, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE